**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**TRENTON DIVISION**

| | |
|---|---|
| MARILYN SILVA, individually and on behalf of all others similarly situated,<br><br>                                  *Plaintiff*,<br><br>vs.<br><br>L'OREAL USA, INC.,<br><br>                                  *Defendant*. | **Civil Action** _____<br><br><br>**JURY TRIAL DEMANDED** |

**<u>CLASS ACTION COMPLAINT</u>**

Plaintiff, Marilyn Silva ("Plaintiff"), brings this Class Action Complaint against Defendant, <u>L'OREAL USA, INC.</u> ("Defendant" or "L'Oreal"), individually and on behalf of all others similarly situated, and alleges, upon knowledge as to Plaintiff's own actions and to counsels' investigation, review of public documents and upon information and belief as to all other matters, as follows:

**<u>NATURE OF THE ACTION</u>**

1.      Plaintiff brings this class action lawsuit on behalf of herself, and all others similarly situated, who purchased Defendant's Recalled La Roche-Posay Effaclar Duo Product (the "Product") because it contains Benzoyl Peroxide ("BPO") which can degrade into benzene, a known carcinogen.[1]

2.      The Product is formulated, designed, manufactured, advertised, sold, and distributed by Defendant or its agents to consumers, including Plaintiff, across the United States.

---

[1] https://www.fda.gov/drugs/drug-safety-and-availability/limited-number-voluntary-recalls-initiated-after-fda-testing-acne-products-benzene-findings-show (Last accessed March 18, 2025.)

3.     The Product is described as follows: Effaclar Duo is an acne treatment and moisturizing cream.[2]

4.     The Product was manufactured by Defendant, distributed to other corporations and then sold to consumers across the United States. The Product was sold directly online to consumers through the company's website and could also be purchased online through other retailers, such as Amazon and Walmart, as well as retail stores such as Sephora, among other places.

5.     Through marketing and sale, Defendant represented that the Product is safe and effective for its intended use as a treatment for acne.

6.     Other manufacturers formulate, produce, and sell non defective acne treatment products with formulations and production methods that do not expose consumers to known carcinogens such as, but not limited to, benzene. As such, the toxic exposure inherent with Defendant's Product is demonstrably avoidable.

7.     Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Product was formulated, designed, and manufactured.

8.     At the time of her purchase, Defendant did not notify Plaintiff and similarly situated consumers, that the benzoyl peroxide contained in the product could degrade into the dangerous carcinogen, benzene, through the product labels, instructions, other packaging, advertising, or in any other manner, in violation of the state and federal law.

---

[2] https://www.laroche-posay.us/effaclar-duo-acne-spot-treatment-effaclarduoacnespottreatment.html?cjdata=MXxOfDB8WXww&srsltid=AfmBOop-BsDdKGPYSZOKnptZe9cFsDWkkhvqXbtqBNZ8yQdDyiKQA8p-&cjevent=e499826003e011f08180009f0a82b832&utm_source=cj&utm_content=Skimlinks&utm_medium=all_affiliate#tab=description (Last accessed March 18, 2025.)

9.    Plaintiff purchased the Product while lacking the knowledge that the Product could expose her to a known carcinogen and harm those who use the Product, thus causing serious harm to those who use such Products.

10.    Because Plaintiff and all consumers purchased the worthless and dangerous Product, which they purchased under the presumption that the Product was safe, they have suffered losses.

11.    As a result of the above losses, Plaintiff seeks damages and equitable remedies.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed Plaintiff Class, on the one hand, and Defendant, on the other, are citizens of different states.

13.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

14.    This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sales of the Product throughout this District along with having manufacturing and research facilities within the state.

15.    Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, given that

Defendant sells and distributes their Product throughout the United States and within this District and that the Plaintiff resides within the District and consumed the Product therein.

## PARTIES

16.    Plaintiff Marilyn Silva is a resident and citizen of Beachwood, New Jersey located in Ocean County.

17.    Marilyn Silva has purchased the Product on approximately 20 occasions over the past three years, including the lot recently recalled by L'Oreal. The Product advises daily use of the Product with her latest use in March 2025.

18.    Defendant L'OREAL, INC. is the largest subsidiary of the L'Oreal Group which promotes itself as the world's leading beauty company.[3]

19.    L'Oreal USA is a Delaware corporation with its American Headquarters located in New York City.  L'Oreal USA, Inc. first registered in the state of New Jersey in 1953 according to the New Jersey Secretary of State website.

20.    L'Oreal USA, Inc. has office locations in Clark, New Jersey, and Jersey City and is currently offering career opportunities at those offices.[4] Additionally, in 2022, L'Oreal announced the building of a new 250,000 square foot research facility in Clark, New Jersey.[5] As such, Defendant is a company that operates the manufacture and retail of the Product in the State of New Jersey, and throughout the United States.

---

[3] https://www.loreal.com/en/usa/articles/beauty-science-and-technology/loreal-strengthens-its-scientific-innovation-capabilities/ (Last accessed March 18, 2025.)
[4] https://careers.loreal.com/en_US/jobs/SearchJobs?3_110_3=18076 (Last accessed March 18, 2025.)
[5] https://www.loreal.com/en/usa/articles/beauty-science-and-technology/loreal-strengthens-its-scientific-innovation-capabilities/ (Last accessed March 18, 2025.)

21.    Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Product, and the claims alleged herein, was primarily carried out at Defendant's headquarters and facilities.

## FACTUAL ALLEGATIONS

22.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

23.    Plaintiff has repeatedly bought the Product during the past three years for personal use.

24.    Defendant is a well-established corporation known for its production, distribution, and importation of the Product and related products.

### The Product

25.    The Product at hand is defective and not safe for use.

26.    Unfortunately, the Product has a risk of exposing consumers to benzene, a known carcinogen.

27.    It is alleged that the Product contains Benzoyl Peroxide which can degrade into benzene in warm temperatures.

28.    The Product as seen below:



v

**Fraudulent Omissions and Loss of Benefit of the Bargain are Actionable**

29.    Plaintiff bargained for a type of acne treatment and moisturizer that was safe to use. Defendant's Product was, and still is, unsafe due to its ingredients which can degrade into benzene and expose consumers to a known carcinogen.

30.    As a result of the Product, Plaintiff, and all others similarly situated, were deprived the benefit of their bargain given that Defendant sold them a product containing a defect.

31.    The dangerous defect inherent to the Product renders them unmerchantable and unfit for their normal intended use as a safe to use acne treatment/ skincare product.

32.    The Product is not fit for its intended use by humans as they expose consumers to a carcinogenic risk.

33.    Plaintiff suffered an injury-in-fact due to an economic loss. The Product was defective at the moment of purchase, therefore, the injury was concrete the moment Plaintiff purchased the Product.  As a result of the subject recall and findings regarding the carcinogens contained in the Product, Plaintiff is unable to continue using the Product and will have to dispose of the Product.  The economic harm can be seen as overpayment, loss of value, or loss of usefulness emanating from the loss of the benefit of the bargain. Additionally, there is a loss of resale value.

34.    The Recall does not completely compensate Plaintiff for all damages incurred, even when there are monetary refunds.

35.    Plaintiff seeks to recover damages because the Product is adulterated, defective, worthless, and unfit for safe human use due to potential exposure to a known carcinogen contained within the Product's formulation.

36.     Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the carcinogenic defect affecting the Product and marketed the Product as safe to use.

37.     Indeed, no reasonable consumer, including Plaintiff, would have purchased the Product had they known of the material omissions of material facts regarding the possibility of being exposed to a known carcinogen.

38.     Plaintiff intended the Product for normal personal use but instead received a product with a defective formulation that exposed them to a carcinogenic risk.

39.     Nowhere on the Product's packaging did Defendant disclose that the Product could present a carcinogenic risk to the user.

40.     If Plaintiff had been aware of the carcinogenic risk of in the Product, they would not have purchased the Product, or would have paid significantly less.

41.     As a result of Defendant's actions, Plaintiff has incurred damages.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class is defined as follows:

**All persons within the United States who purchased Effaclar Duo within 2 years prior to the filing of this lawsuit**.

43.     Members of the Class will be referred to as "Class Members".

44.     Plaintiff qualifies as a member of the Proposed Class in the preceding paragraphs.

45.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded

from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family.

46.    The Proposed Class definition may be amended or modified from time to time.

47.    The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the Putative Class are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

48.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49.    The Proposed Class is so numerous that the joinder of all members is impracticable.

50.    This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

51.    **Numerosity: Fed. R. Civ. P. 23(a)(1) –** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

52.    **Superiority: Fed. R. Civ. P. 23(b)(3) –** A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate and/or incompatible standards of conduct for Defendant will substantially impair or impede the ability of

Class Members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Class who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members

53.    **Typicality: Fed. R. Civ. P. 23(a)(3) –** Plaintiff's claims are typical of those of the Class in that the Class Members uniformly purchased Defendant's Product and were subjected to Defendant's uniform merchandising materials and representations at the time of purchase.

54.    **Adequacy: Fed. R. Civ. P. 23(a)(4) –** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the Class that she seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and she intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

55.    **Existence and Predominance of Common Questions of Law and Fact Fed. R. Civ. P. 23(a)(2) and 23(b)(3) –** There are questions of fact and law common to the Class that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

    a.   Whether Defendant negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution, and/or sale of the Product;

    b.   Whether Defendant sold the defective Product, which was unreasonably dangerous to consumers such as Plaintiff and members of the Class;

    c.   Whether Defendant failed to adequately warn Plaintiff and the Class of the dangers with respect to the defective Product;

    d.   Whether Defendant was negligent for failure to warn;

e.  Whether Plaintiff and the Class suffered Damages as a result of the defective Product;

f.  Whether Defendant was negligent for failure to test;

g.  Whether Defendant's advertising, merchandising, and promotional materials directed to Plaintiff were deceptive regarding the risks posed by Defendant's Product;

h.  Whether Defendant made representations regarding the safety of the Product;

i.  Whether Defendant omitted material information regarding the safety of the Product;

j.  Whether Defendant's Product was merchantable;

k.  Whether Defendant violated the consumer protection statutes invoked herein;

l.  Whether Defendant's conduct alleged herein was fraudulent; and

m.  Whether Defendant was unjustly enriched by sales of the Products.

56.     The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendant's Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to the other available methods for the fair and efficient adjudication of Plaintiff's claims.

57.     **Insufficiency of Separate Actions: Fed. R. Civ. P. 23(b)(2)** – Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for

Defendant. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

58.    **Declaratory and Injunctive Relief** – Defendant has acted, or refused to act, on grounds generally applicable to Plaintiff and the other Class Members as described below, with respect to the members of the Class as a whole. Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing the Product as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Product confers the advertised benefits and are otherwise safe to use as intended.

## CAUSES OF ACTION

### COUNT I
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J.S.A. 56:8)**
**(On Behalf of Plaintiff and Class)**

59.    Plaintiff incorporates by reference all the allegations contained in the aforementioned paragraphs as if fully set forth herein.

60.    Plaintiff brings this count on behalf of herself and the Class.

61.    Defendant had actual knowledge that the Product suffered from an inherent formulation defect exposing consumers to a known carcinogen and, as such, was defectively designed and/or manufactured, and was not suitable for their intended use prior to their sale.

62.    Having been aware of the defective formulation, and knowing that Plaintiff and Class Members could not have reasonably been expected to know of the Defect, Defendant had a duty to disclose the carcinogenic risk to Plaintiff and Class Members in connection with the sale of the Product. Defendant had a further duty to disclose the Defect because:

   a.    Defendant was in a superior position to know the true state of facts about the Product's formulation and potential carcinogenic defect contained in the Product,

and Defendant knew these facts were not known or reasonably discoverable by Plaintiff or Class Members;

b. Given the undisclosed carcinogenic risk within the Product's formulation, Plaintiff and Class Members lacked the sophistication and expertise in vehicle components that would be necessary to discover the carcinogenic risk;

c. Defendant knew that the formulation defect gave rise to carcinogenic exposure concerns for the consumers who use the Product, and the omitted facts relating to the Defect were material because they directly impact the safety of the Product and would have been part of the purchasing decision;

d. Defendant made incomplete representations about the safety and reliability of the Product while actively withholding and concealing the material facts about the known defective nature of the Product from Plaintiff and Class Members. In uniform advertising and materials, Defendant intentionally concealed, suppressed, and failed to disclose to the consumers that the Product contained ingredients that could exposes consumers to a known carcinogen. Because it voluntered to provide information about the Product that it marketed and offered for sale and lease to consumers, Defendant had the duty to disclose the whole truth.

63.     Defendant concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Product, in direct breach of its duties. The fact that Defendant's Product contained ingredients that could degrade into a known carcinogen is a material fact as any formulation defect that could potentially cause exposure of the benzene to the consumer, and a reasonable person would find it important when deciding to purchase an acne or skin care treatment cream because it directly impacts both the value and safety of the Product purchased by Plaintiff and Class Members.

64.      Defendant was knowledgeable of the falsity of the safety of the defective formulation and/or recklessly disregarded the truth or falsity of the dangerous nature of the Product's formulation defect.

65.     Defendant intended for Plaintiff and Class Members to rely and act upon such falsity as part of Defendant's commercial operations to skin care and acne treatment products — which they did by purchasing the Product at the prices they paid while believing Products would

not have a defective formulation that would affect the quality, reliability, and safety of the Product, much less expose them to known carcinogens.

66.    Plaintiff and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class Members did not, and could not, unravel Defendant's deception on their own.

67.    Plaintiff and Class Members would not have purchased the Product had they known they would potentially have been exposed to a carcinogen. Plaintiff and the Class did not know of such and relied upon the false presentation of safety in their purchases of the Product.

68.    The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase the Product. Whether an acne or skin care treatment exposes a consumer to known carcinogens is a material safety concern. Had Plaintiff and Class Members known about the defective nature of the Product, they would not have purchased it.

69.    Defendant actively concealed and suppressed these material facts, in whole or in part, in order to maintain a market for the Product, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendant and their products. They did so at the expense of Plaintiff and Class Members.

70.    If Defendant had fully and adequately disclosed the carcinogenic risk to consumers, Plaintiff and Class Members would have seen such a disclosure.

71.    Through Defendant's omissions and concealment regarding the carcinogenic risk of using the Product, Defendant intended to induce, and did induce, Plaintiff and Class Members to purchase the Product and marketed it as safe for human use.

72.     Plaintiff and other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase of Defendant's defective Product.

73.     As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages.

74.      Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

75.     Plaintiff suffered injury through Defendant's conduct in that she suffered economic loss and purchased a Product that exposed her to toxins.

**COUNT II**
**Unjust Enrichment**
**(On behalf Plaintiff and the Class)**

76.     Plaintiff incorporates the aforementioned paragraphs as if fully set forth herein.

77.     Through wrongful acts or omissions Defendant convinced Plaintiff and Class Members to pay a premium price for a defective product instead of a product free from defects as they were led to believe.

78.     Plaintiff, and the other members of the Class, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Product. These monies were not gifts or donations but were given in exchange for the Product.

79.     Defendant voluntarily accepted and retained these benefits under conditions where it was unjust to do so as Plaintiff and Class Members paid for a defective Product as a result of the wrongful acts or omission by Defendant given the Product defect. Defendant has knowledge and

appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and Class Members.

80.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for a Product unfit for human use, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

81.     Defendant received benefits in the form of revenues from purchases of the Product to the detriment of Plaintiff, and the other members of the Class, because Plaintiff, and members of the Class, purchased mislabeled products that were not what Plaintiff and the Class bargained for and were not safe and effective, as claimed.

82.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Product by Plaintiff and the other members of the Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Product was misleading to consumers, and there is a manifest defect which caused injuries to Plaintiff, and members of the Class, because they would have not purchased the Product had they known the true facts.

83.     Plaintiff and members of the Class have been injured by reason of this unjust enrichment. Plaintiff alleges unjust enrichment in the alternative to an adequate remedy at law.

84.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT III
### Fraudulent Concealment or Fraud by Omission
### (On behalf of Plaintiff and the Class)

85.     Plaintiff incorporates the previous aforementioned paragraphs as if fully set forth herein.

86.     Plaintiff brings this Count individually and on behalf of the Class.

87.     Defendant had knowledge of the Product's defect or should have discovered the defect.

88.     Defendant is the "who" that knowingly failed to disclose a material defect to Plaintiff and the Class Members at the time they purchased the Product.

89.     The Product's defect is the "what" which was omitted and concealed.

90.     Defendant failed to disclose the Product defect so it could sell more Products and/or sell the Product at a premium, which is "why" the information was not disclosed.

91.     The "how" of Defendant's concealment of information is by denying the existence of the defect after numerous consumer complaints or based on testing or by simply not telling consumers of the Product defect or not to be forthcoming so business would not be disrupted by a recall or negative publicity.

92.     The "where" of the concealment is in every communication, advertisement, product packaging and labels regarding the Product to the Plaintiff and the Class Members.

93.     The "when" is the failure to disclose the Product defect at any time prior to purchase of the Product by the Plaintiff or the Class.

94.     Defendant and affiliated retailers failed to disclose the defect.

95.     These claims are based on fraudulent conduct that began before purchase and is distinct from a contract claim.

96.    Defendant aimed to portray the Product as safe for frequent and repeated use and omitted key facts concerning the potential carcinogenic harm as a result of the defect in the Product.

97.    Defendant, acting through its representatives or agents, delivered the Product to its distributors and through other channels to consumers, including the Plaintiff and Class Members.

98.    Defendant, as the owner, manufacturer, marketer, and seller of the Products, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the Products. Defendant owed Plaintiff and Class Members a duty to disclose because the risks associated with the defective Product was known and/or accessible exclusively to Defendant, who had superior knowledge of the facts; because the facts would be material to consumers; because the Defendant actively concealed or understated them; because the Defendant intended for consumers to rely on the omissions in question; and because Defendant made partial representations concerning the same subject matter as the omitted facts. Furthermore, because the Product poses an unreasonable risk of substantial bodily injury, Defendant was under a continuous duty to disclose that the Product contained a defect known to cause harm, to whoever uses it.

99.    Defendant willfully and knowingly omitted material information regarding the quality and safety of the Product as discussed herein.  Defendant countenanced these material omissions to boost or maintain sales of the Product, and to create a false assurance that prolonged loyalty to Defendant's brand—the continued use of the Product—would not place consumers in danger. The omitted information and partial representations were material to consumers because they play a significant role in determining the value of the Product at the time of purchase.

100.    During this time, Plaintiff, and members of the Class, were using the Product without knowing the Product could harm them due to the defect in the Product; namely the

presence of Benzoyl Peroxide which could degenerate into a known carcinogen benzene despite normal intended use by the consumer.

101.    Defendant failed to discharge its duty to disclose these materials facts.

102.    Although Defendant had a duty to ensure the accuracy of the information regarding the Product because such information was within the exclusive knowledge of Defendant and because the information pertains to serious health issues, Defendant failed to satisfy its duty.

103.    Defendant engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively convey that their products were safe. Defendant's actions were done to gain a commercial advantage over competitors, and to drive consumers, like the Plaintiff and Class Members, away from purchasing a competitor's product.

104.    Plaintiff and the Class reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Product manufactured and sold by Defendant had they known they possessed this risk of harming them.

105.    As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiff, and the Class, suffered damages in the amount of monies paid for the defective Product at the time of purchase since it is diminished in value or worthless, as well because of loss of use and loss of value.

106.    Plaintiff and Class Members have suffered damages in an amount to be determined at trial that includes, among other things, refunding the amount Plaintiff and Class Members paid for the Product, and awarding medical monitoring expenses, costs, interest, and attorneys' fees.

<u>**COUNT IV**</u>
**Strict Liability- Failure to Warn**
**(On behalf of Plaintiff and the Class)**

107.    Plaintiff incorporates the previous aforementioned paragraphs as if fully set forth herein.

108.    Defendant had a duty to warn Plaintiff and Class Members regarding the Defect, that being the risk of harming consumers due to the Product containing Benzoyl Peroxide which could degrade into benzene – a known carcinogenic that could harm humans.

109.    Defendant, which is engaged in the business of selling, manufacturing and supplying the Product, placed it into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Product.

110.    The Product supplied to Plaintiff and Class Members was defective in design and formulation and unreasonably dangerous when they left the hands of Defendant and reached consumers, including Plaintiff and Class Members, without substantial alteration in the condition in which they were sold.

111.    Defendant was in a superior position to know of the Defect, yet as outlined above, chose to do nothing when the defect became known to them.

112.    Defendant failed to provide adequate warnings regarding the risks of the Product after knowledge of the Defect was known only to them.

113.    Defendant had information regarding the true risks but failed to warn Plaintiff and members of the Class to strengthen their warnings.

114.    Plaintiff and members of the Class would not have purchased, chosen, and/or paid for the Product if they knew of the Defect and the risks of purchasing the Product.

20

115.    This Defect proximately caused Plaintiff and Class Members' damages.

116.    Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

**COUNT V**
**Strict Liability- Design and Formulation Defect**
**(On behalf of Plaintiff and the Class)**

117.    Plaintiff incorporates the previous aforementioned paragraphs as if fully set forth herein.

118.    The design and formulation of the Product was defective and unreasonably dangerous.

119.    The carcinogenic risk of benzene due to the presence of Benzoyl Peroxide within the Product creates unreasonable danger.

120.    The design and formulation of the Product rendered it not reasonably fit, suitable, or safe for their intended purpose.

121.    There is no safe level for benzene exposure for humans.

122.    The carcinogenic risk of contained within the Product outweighed the benefits and rendered the Product unreasonably dangerous.

123.    Defendant's Product was defective because the design and formulation of the Product included a defect which could create a carcinogenic risk due to the presence of Benzoyl Peroxide which can degrade into benzene- a known carcinogen.  After Defendant knew or should have known of the carcinogenic risk of due to the formulation and ingredients in the Product, Defendant continued to promote the Product as safe and effective to the Plaintiff, Class Members, and the public.

124.    There are other acne treatment and skin care products that do not pose the same carcinogenic risk, meaning that there were other means of production available to Defendant.

125.    The Product is unreasonably unsafe, and the Product should not have been sold in the market.

126.    The Product did not perform as an ordinary consumer would expect.

127.    The Defendant's design/formulation of the Product is the proximate cause of damages to the Plaintiff and Class Members.

128.    Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Class, alleged herein, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

A. Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C. Declaring that Defendant is financially responsible for notifying the Proposed Class Members of the pendency of this action;

D. Award all actual, general, special, incidental, statutory, consequential and punitive damages to which Plaintiff and Class Members are entitled;

E. Scheduling a trial by jury in this action;

F. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

G. For an order of restitution and all other forms of equitable monetary relief;

H.  For injunctive relief as pleaded or as the Court may deem proper;

I.  Award costs including reasonable attorneys' fees, court costs, and other litigation expenses; and

J.  Any other relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: March 21, 2025                    Respectfully Submitted,


*/s/ Philip Furia*
Philip Furia, Esq.
**SULTZER & LIPARI**
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
furiap@thesultzerlawgroup.com

-AND-

Paul J. Doolittle, Esq. (*pro hac vice forthcoming*)
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
        cmad@poulinwilley.com

*Attorneys for Plaintiff*